R. HINMAN, Appellee, v. CHARLES TREINEN et al., Appellants.

FRAUD: Acts Constituting—Expressions of Values. Extravagant expressions of opinion as to the value of certain lands will not constitute fraudulent representations when the buyer personally inspects the land and judges for himself.

PLEADING: Defenses in General—Failure to Question. An insufficient defense unchallenged in the trial court must prevail.

HUSBAND AND WIFE: Disabilities—Contract of Suretyship. A wife may be liable upon a contract of suretyship for the debt of her husband, irrespective of the rule at common law.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

OCTOBER 23, 1923.

ACTION in equity, to foreclose mortgage. There was a decree for plaintiff, as prayed, and defendants appeal.—*Modified and affirmed.*

*Kass Bros. & Sievers,* for appellants.

*O. H. Montzheimer,* for appellee.

WEAVER, J.—The story of this litigation had its genesis in the craze of real estate speculation of which Iowa was the scene,

a few years since. On May 29, 1919, three men, Yocum, Donovan, and Briggs, holding a contract for the purchase of a farm of 280 acres, on which they had made a small fractional payment, entered into another contract to sell the same at the agreed price of $72,100 to one Will, who made a small fractional payment thereon. Two days later, Will entered into a contract to sell the same property to the defendant herein, Charles Treinen, for $93,000, the deal to be consummated by the execution and delivery of deed and mortgage on March 1, 1920. This contract names only the man Will as party of the first part, and Charles Treinen as party of the second part, and provides that Charles Treinen shall assume payment of three prior mortgages, pay a cash installment on March 1, 1920, and "also give his note" for an additional sum. On March 1, 1920, a deed of the property was made from Yocum, Donovan, and Briggs directly to Charles Treinen, and at the same time, Charles Treinen and his wife, Anna, executed notes and mortgage for $13,000 and interest. On July 13, 1920, Yocum, Donovan, and Briggs made a written assignment of the notes and mortgage, without recourse, to R. Hinman, plaintiff herein. On July 6, 1921, there having been a default in payment of a due installment of the debt secured by the mortgage, this action was begun to foreclose it, and for personal judgment against both Treinen and wife. The defendants having answered separately, we will consider the issues raised, in separate and distinct paragraphs.

I. Charles Treinen admits the making of the mortgage and notes, but avers that they were induced and procured from him by false and fraudulent representations. The alleged facts relied upon as constituting fraud are stated in his original answer, filed September 26, 1921, as follows:

1. FRAUD: acts constituting: expressions of values.

"Par. 4. That, at the time said contract was entered into, the said T. G. Will represented that he was the owner of said premises, and that the premises were actually worth the sum of $335 per acre, and that he had a purchaser who was willing to purchase and had offered to pay to the said Will the sum of $335 per acre for said premises; that the purchase by the defendant would be an exceptionally good investment; and that he could and would be able to realize a profit of not less than

$50 per acre within 60 days; that he was familiar with land values in the vicinity in which this land is located; and that he knew, of his own personal knowledge, that the said premises were then worth not less than $335 per acre.

"Par. 5. That this defendant was unfamiliar with land values in the particular vicinity in which this land is located, and believed the statements so made by the said T. G. Will to be true, and was thereby induced to enter into said contract and accept the conveyance, and was deceived thereby, and would not have entered into said contract or accepted said conveyance, had he known that such statements were not true; that all of said statements so made by the said T. G. Will were false and untrue, and known to be false and untrue when made. * * *

"Par. 7. That said land, at the time said contract was signed, was not worth the sum of $335 per acre, but was, in fact, worth not to exceed $250 per acre; that, if said land had been as represented, said land would have been worth $335 per acre, or the total sum of $93,800; whereas, in truth and in fact, the same was worth not to exceed $70,000; and by reason of all of which, the defendant has been damaged in the sum of $23,800, no part of which has been paid."

Thereafter, and after issues had been joined, this defendant amended his answer and counterclaim by alleging false and fraudulent representations by Will with reference to the quality and value of the land and its alleged freedom from noxious weeds. The allegations of the answer and counterclaim and the course of argument pursued by appellant's counsel render it somewhat uncertain whether he seeks a remedy for such alleged wrongs by way of rescission or by recovery of damages. Considering the case made by him from either standpoint, we think there was failure of proof to establish any actionable fraud warranting the granting of the relief sought by Charles Treinen; for, if we grant the literal truth of the charge that Will, either personally or by agent, stated to appellant that the land was worth $335 per acre, and that a purchase at that figure would be an exceptionally good investment, and would enable the appellant to resell such property at a large profit in a short time, it falls far short of justifying a finding of fraud which would vitiate a contract so induced. They are mere extravagant ex-

pressions of opinion, and not representations of substantive facts. Treinen lived at no great distance from the land, and gave it his personal inspection. *Tooker v. Alston*, 16 L. R. A. (N. S.) 818; *Scroggin v. Wood*, 87 Iowa 497; *Lynch v. Kerslake*, 186 Iowa 983; *Robinson & Co. v. Larson*, 112 Iowa 173.

The further claim made of misrepresentation, as alleged in the amendment to this defendant's answer, has much the appearance of an afterthought. Had such a fraud been perpetrated upon him, the natural and seemingly inevitable thing for him to do was to plant his defense and counterclaim thereon promptly on being sued by the plaintiff. Instead of this, he pleaded nothing except the alleged expressions of opinion by Will, to which we have already alluded; and thus the issue stood for nearly two years after the contract of sale was entered into; and not until the case was on trial does he seem to have conceived the idea of a possible defense on this new and hitherto undisclosed ground for relief. Furthermore, the proof offered of such alleged fraud is by no means satisfactory. He was not buying the land "unsight and unseen." He had examined it for himself; and if he trusted to the "trader's talk" and puffing on the part of Will, instead of exercising the caution of an ordinarily prudent man, neither law nor equity will permit him to repudiate his bargain.

The simple truth appears to be that, in common with hundreds of others caught in the whirl of extravagant and reckless real estate speculation which swept over the country during the years 1919 and 1920, Treinen was carried off his feet, and swept into the maelstrom of financial destruction which swallowed up countless other wrecks of similar character. Looked at from the standpoint of the present, it would almost seem that a plea of insanity would be a more plausible or more fitting defense. The trial court did not err in finding for plaintiff against this defendant.

II. We now take up the issue presented by the separate answer of Anna Treinen. This discussion should be prefaced by saying that appellee, in his argument to this court, admits that the note on which a recovery is sought is not negotiable, and the question whether plaintiff is entitled to the rights of a holder in due course

2. PLEADING: defenses in general: failure to question.

of commercial paper is not involved. In other words, it is competent for this defendant to urge and have the benefit of any defense which might have been available to her if this suit were being prosecuted by the payee of the paper.

The defense, stated in brief terms, is that Anna Treinen is the wife of Charles Treinen; that she had no part or interest in the contract for the purchase of the land; that said purchase was made by Charles Treinen alone, and not upon any credit or undertaking on the part of the said Anna; that, when the conclusion of the deal was evidenced by deed of the land, the conveyance was made to Charles Treinen alone, and that she joined her husband in making the note and mortgage for no other purpose except to waive or release her contingent right of dower; that at no time did she intend or understand that she was binding or obligating herself to any personal liability for the payment of the debt of her husband for the land so purchased by him.

The sufficiency of such answer was not challenged or objected to by motion or demurrer, but plaintiff took issue thereon by reply in denial, and by alleging that said Anna Treinen, by signing said papers and permitting the payees to sell the same, had estopped herself from making such defense. As already suggested, the note being nonnegotiable, if such defense would be available to the appellant as against the payee, it is equally potent against the plaintiff. That such defense, being unchallenged, is valid as a matter of pleading, and, if sustained by the evidence, entitles the appellant to be dismissed, is well settled. *Ormsby v. Graham,* 123 Iowa 202, 211; *Roberts v. Ozias,* 179 Iowa 1141, 1143; *First Nat. Bank v. Zeims,* 93 Iowa 140, 143. On the trial of this issue, the appellant Anna was the only witness attempting to speak concerning the facts there pleaded. She testified to the truth of the matters pleaded by her. She was not cross-examined on the part of the appellee, nor did any other witness dispute the truth of her story. It follows that the defense so pleaded and sustained must be held to have been established, and that recovery should not have been awarded against her, otherwise than to cut off her contingent interest in the property.

There is another angle from which the same result may be

reached; but, as the conclusion just announced seems to be decisive of the appeal of the wife, Anna Treinen, we shall not extend this opinion for its discussion.

III. In their argument to this court, counsel for appellants have taken the position that, under the law of this state, a wife cannot be made liable upon a contract of suretyship for the debt

3. HUSBAND AND WIFE: disabilities: contract of suretyship.

of her husband, and, in support of that proposition, have presented a formidable brief of authorities. That the proposition so advanced would have to be sustained, in the absence of statutes modifying the common law, must be admitted; but we think it impossible so to do without plain disregard of the statute, Code Section 3164. The decision of the question thus raised is not vital to the present appeal, and we mention it thus briefly, to avoid any appearance of doubt about it.

It follows from the foregoing that the decree appealed from is affirmed, as rendered against the defendant Charles Treinen, and reversed in so far as it provides for a personal recovery against the defendant Anna Treinen. Costs apportioned, to be paid one half by the plaintiff and one half by the defendants.— *Modified and affirmed.*

PRESTON, C. J., STEVENS and DE GRAFF, JJ., concur.